UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CHARLENE FORTUNE                             CIVIL ACTION

VERSUS                                            NO:  06-2156-SSV-SS

JO ANNE BARNHART, COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

The plaintiff, Charlene Fortune ("Fortune"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(a)(3).  Rec. doc. 1.

## PROCEDURAL HISTORY

On July 7, 2003, Fortune submitted an application for benefits reporting that she became unable to work on September 1, 2002.  R. 52-54.  She described her disabling conditions as unexpected seizures.  R. 67.  Her application for benefits was denied.  R. 23-25.  A hearing was held before an Administrative Law Judge ("ALJ") on May 3, 2005.  R. 160.  On June 21, 2005, the ALJ issued an unfavorable decision.  R. 14-21.  On February 24, 2006, the Appeals Council denied

Fortune's request for review. R. 7-8A. The Appeals Council granted her request for more time to file a civil action. R. 4-5. On April 24, 2006, she filed a complaint in this Court. Rec. doc. 1. The parties filed cross-motions for summary judgment. Rec. docs. 7 and 9. Fortune was represented by counsel throughout these proceedings.

## STATEMENT OF ISSUES ON APPEAL

Fortune's request for judicial review raises the following issue:

Did the ALJ fail to fully consider Fortune's limitations when determining her ability to return to work?

## THE ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's seizure disorder is a "severe" impairment, based upon the requirements in the Regulations (20 CFR § 416.920).

3. This medically determinable impairment did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant's allegations regarding her limitations were not totally credible for the reasons set forth in the body of the ALJ's decision.

5. The claimant had the residual functional capacity set forth in the body of the ALJ's decision.

6. The claimant's past relevant work as a housekeeper did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 416.965).

7. The claimant's medically determinable impairment did not prevent her from performing her past relevant work.

8. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the ALJ's decision (20 CFR § 416.920(f)).

R. 20.

## ANALYSIS

a.      Standard of Review.

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Newton, 209 F.3d at 452. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).  This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's.  Id.; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.  Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically

3

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Newton v. Apfel, 209 F.3d at 453; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1] The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of

---

[1] The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

performing.  Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).  "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Id.

b.   Testimony at Hearing.

Fortune was 44 at the time of the hearing. R. 164. She had completed the twelfth grade. R. 165. She had a seizure disorder as a child. R. 165. The condition reappeared when she was pregnant in 1990. R. 165. She stopped working in 1991. R. 165. At the time, she was a housekeeper at a hotel. R. 165-66. She began seeing Dr. Idowu in 2002. R. 166-67. She saw him about every three months. R. 171.

The seizures occurred without warning about once or twice a month. R. 168 and 170-71. Sometimes they occurred at night in her sleep. R. 171. They occurred more frequently in the summer because of the heat. R. 173. The seizures lasted between one and two minutes and shook her whole body back and forth. R. 168. Sometimes she fell when she had them. R. 170. After a seizure she was tired and it took hours before she could begin thinking properly. R. 171. She took medication for the seizures and for her back pain. R. 170. The medication made her drowsy. R. 168 and 172.

Fortune also had tremors. R. 165. They occurred every day. R. 169. They prevented her

from writing or holding a cup of coffee. R. 169. Sometimes she had difficulty communicating with people when she had tremors. R. 170. The more she used her hand, the more frequently the tremors occurred. R. 169-70.

In the hypothetical question posed by the ALJ to the vocational expert, he included the following limitations: (1) occasionally lift and carry a maximum of 20 pounds and frequently 10 pounds; (2) restricted from any balancing as a condition of employment; (3) no work at unprotected heights or around dangerous moving machinery; (4) no climbing of ladders, ropes or scaffolds; (5) able to stand and walk for six of eight hours; (6) able to sit for six of eight hours; (7) avoid exposure to extremes of heat as a condition of employment; and (8) a clean work environment with no excessive odors, dust and gases. R. 175-76. With these limitations, the expert said she could do hotel housekeeping work. She could not miss more than two days of work per month without being terminated. R. 176. If she was required to lie down during the day or take long breaks, she could not do the work. R. 177. Only gross motor skills were required for the position. Id.

The vocational expert testified that if she was required to move beds around to clean under the beds, the ALJ's weight limit would be exceeded. R. 178. If the tremors prevented her from handling objects that were breakable, for example drinking glasses, she could not do the hotel housekeeping job. R. 179. He also was of the opinion that if she had a least one seizure a month at work where she fell on the floor shaking, she would lose her job. R. 179.

c.  Medical Evidence.

Fortune's first visit to Dr. Benedict E. Idowu, a neurologist and board certified osteopathic physician, was on October 31, 2002. R. 116 and 133. She reported seizure like activity and a history of childhood seizures. R. 116. Diagnostic studies were recommended. R. 115. She returned

to Dr. Idowu on December 3, 2002 with complaints of tremors although she reported the medication helped her symptoms. She was to return in two months. R. 114. On March 13, 2003, Fortune returned to Dr. Idowu with complaints of tremors but again reported that the medication helped. She was to return in two to three months. R. 113. On June 5, 2003, she reported that her tremors were worse and her whole body shook. R. 112.

Fortune was hospitalized at Pendleton Memorial Methodist Hospital from June 9 to June 12, 2003 for intractable motor seizures that began a few days before admission. R. 85-87. During the admission she received a MRI of the brain, EEG, and thyroid function tests. R. 85. All of these were negative except for the EEG. R. 85. A seizure was induced after hyperventilation. R. 85. The onset and the cessation of the seizure were abrupt but during the seizure her whole body was described as "jerking" and "bouncing." R. 85-86. Dr. Idowu was of the opinion that this was an abnormal EEG and could reflect an atypical partial seizure disorder. R. 86. Medication was prescribed. R. 86. While hospitalized, she averaged one seizure per day. Her condition at discharge was good. She was to return in two weeks to see how the seizures were controlled by the medication. Topamax and Neurontin were prescribed for the seizures and Esgic Plus was prescribed for headaches. R. 86.

On June 27, 2003, Fortune returned to Dr. Idowu. Her medication was continued. She was to return in two months. R. 110. On September 11, 2003, she returned to Dr. Idowu and reported that summer heat tended to trigger her seizures. Her medication was continued and she was to return in four months. R. 109. On November 10, 2003, Fortune reported an increased frequency in seizures, reporting that they occurred about twice a week. She also complained of back pain. Her medication was increased and she was to return in three months. R. 127. On January 15, 2004, she

returned to Dr. Idowu and reported she was about the same. She could not get the tremors under control. Her medication was increased and she was instructed to return in three months. R. 130. On April 8, 2004, she returned to Dr. Idowu. Her medication was continued and she was to return in four months. R. 137. On September 30, 2004, she was seen by Dr. Idowu reporting tremors. She complained of back pain radiating to her legs. Her medication was continued, but the Neurontin dosage was reduced. She was to return in two to three weeks. R. 136. An October 9, 2004 diagnostic test revealed bilateral median nerve axonal neuropathy. R. 135 and 153. When she returned on October 15, 2004, her medication was continued and she was to return in four months. R. 135. On February 14, 2005, she was seen by Dr. Idowu and she reported the tremors were intermittent. She encountered back pain when lifting. Her medication was continued and she was to return in four months. R. 151.

d. <u>Plaintiff's Appeal</u>.

<u>Issue</u>. Did the ALJ fail to fully consider Fortune's limitations when determining her ability to return to work?

The ALJ determined that Fortune carried her burden of proof at the first three steps of the five step analysis. At the fourth step, however, he determined that her impairment did not prevent her from returning to her former employment in hotel housekeeping. Fortune testified that: (1) her seizures occurred without warning about once or twice a month (R. 168 and 170-71); (2) sometimes they occurred at night in her sleep (R. 171); (3) they occurred more frequently with summer heat (R. 173); (4) they lasted between one and two minutes and shook her whole body back and forth (R. 168); (5) sometimes they caused her to fall (R. 170); and (6) after a seizure she was tired and it took hours before she could begin thinking properly (R. 171). The state Office for Disability Determinations required that Fortune complete a questionnaire. R. 56-63. In her response, dated

July 23, 2003, she reported that during a seizure her whole body shook and after a seizure she was fatigued and exhausted. R. 57.

The ALJ found that Fortune's allegations were only partially supported or credible. R. 19. The ALJ based the finding on several factors, including the absence of any complaints in the medical records of fatigue for several hours following seizures. In effect, the ALJ found that Fortune did not experience fatigue for several hours following a seizure. Such a finding was inherent in the determination that she could return to her hotel housekeeping duties. If the seizures left her fatigued and unable to work, she was not able to stand or walk for six hours out of an eight hour work day. These findings were part of the ALJ's determination of Fortune's residual functional capacity. R. 19.

The Commissioner responds that there were no medical records to support Fortune's subjective statements about her symptoms, including the complaint of fatigue following the seizures. Pursuant to 20 CFR § 416.929 and Social Security Ruling 96-7p (1996 WL 374186 (S.S.A.)), the ALJ had a duty to make a finding on Fortune's credibility. The Commissioner contends that ALJ's credibility determination is entitled to considerable deference. In Carrier v. Sullivan, 944 F.2d 243 (5th Cir. 1991), the Fifth Circuit noted that the medical records did not contain any indication that plaintiff complained of pain to his examining physicians. It declined to reweigh the ALJ's finding that the plaintiff's subjective complaints of pain were not credited to the extent sought by the plaintiff. Id. at p. 246-47.

The absence of reports of fatigue following seizures in the patient's medical records is different from the absence of complaints of pain in a patient's medical records. While the latter strongly indicates that the patient was not suffering from pain at the time of a visit to a physician,

the former may be attributable to the fact that the physician did not ask the patient about the after effects of the seizures. The court agrees with the contention of the plaintiff that it was improper for the ALJ to rely on the absence of reports of post-seizure fatigue to conclude that Fortune's reports of her symptoms were only partially credible. If the records demonstrated that Dr. Idowu had asked Fortune about the after effects of the seizure and she did not report fatigue, the result would be different. The medical records indicate that Dr. Idowu was attempting to control Fortune's seizures and tremors with medication. Dr. Idowu's records contain no comment about her ability to perform the duties associated with her prior work as a hotel housekeeper.

The ALJ did not have before him sufficient facts on which to make an informed decision and his decision is not supported by substantial evidence. See McGee v. Weinberger, 518 F.2d 330, 332 (5th Cir. 1975). It is ALJ's duty to develop the facts relative to a claim for benefits fully and fairly. The discharge of this duty required that he develop the record further on the after effects of the seizures. In failing to do so, his decision was not supported by substantial evidence. See Kane v. Heckler, 731 F.2d 1216, 1219 (5th Cir. 1984).[2] Id. at 1219-20. The ALJ could have subpoenaed Dr. Idowu to testify. In the alternative, the ALJ could have had Fortune examined by another neurologist.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that Fortune's motion for summary judgment (Rec. doc. 7) be GRANTED in PART and DENIED in PART; defendant's cross-motion for summary judgment (Rec. doc. 9) be DENIED; and that this matter be remanded to the ALJ to develop the record further on the effects on Fortune following her seizures and her ability to perform the duties

---

[2] Fortune was represented by counsel, so the ALJ did not have a heightened duty to develop the record.

associated with her prior work as a hotel housekeeper in view of her history of ongoing seizures and tremors.

## **OBJECTIONS**

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 5th day of December, 2006.

_____
**SALLY SHUSHAN**
**United States Magistrate Judge**